FILED

2012 JUN 18  AM 8: 13

CLERK US ... ...
SOUTHERN DISTRICT ...

BY __ml_____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                            Plaintiff,<br><br>v.<br><br>KAREN DUNFORD,<br><br>                           Defendant. | No. 09-CV-2578-L (WVG)<br><br>**REPORT AND RECOMMENDATION GRANTING PLAINTIFF'S APPLICATION FOR WRIT OF CONTINUING GARNISHMENT**<br><br>[DOC. NO. 16] |

On May 30, 2012, a Garnishment Hearing was held before United States Magistrate Judge William V. Gallo. Ms. Carol Lee, Assistant United States Attorney, appeared on behalf of the United States of America (hereafter "Plaintiff"), and Ms. Karen Hancock-Dunford (hereafter "Defendant") appeared in pro per.

On November 16, 2009, Plaintiff filed a Complaint for Money Damages against Defendant. (Doc. No. 1.) On March 24, 2010, a Judgment was entered against Defendant by the Clerk of Court. (Doc. No. 5.) On July 22, 2010, Plaintiff requested a Judgment Debtor Exam. (Doc. No. 12.) On March 15, 2012, Plaintiff filed an Application for Writ of Continuing Garnishment[1] against Defendant, requesting the Court's permission to garnish 25 percent of Defendant's wages. (Doc. No. 16.) The Application was filed to collect payment on Defendant's outstanding U.S. Department of

//

---

[1]    Plaintiff filed the Application as a Writ of "Continuing" Garnishment, which implies that there was a prior writ. There was no prior writ, this is Plaintiff's first Application for a Writ in this case. (Doc. No. 23 at 1.)

09CV2578

1   Education Student Loan debt. (Doc No. 17.) Also on March 15, 2012, Plaintiff filed a Notice of Post-

2   Judgment Garnishment Instructions to Debtor. (Doc. No. 18.)

3          In response to Plaintiff's Application, and pursuant to 28 U.S.C. 3205(c)(5), Defendant

4   requested a hearing before the Court on the Application for Writ of Continuing Garnishment. (Doc.

5   No. 20.) On April 6, 2012, the Garnishee, Defendant's employer, Community Research Foundation,

6   filed an Answer to the Writ as required by 28 U.S.C. § 3205(c)(4), confirming Defendant's wages.

7   (Doc. No. 21.) On May 10, 2012, Plaintiff filed a Response and Opposition to Defendant's Request

8   for a Hearing Upon Plaintiff's Application for Writ of Garnishment. (Doc. No. 23.) This Court

9   granted Defendant's request and a garnishment hearing was held on May 30, 2012. (Doc. No. 26.)

10         The Court, having reviewed Plaintiff's Complaint, the Clerk's Judgment, Plaintiff's Request

11  for a Judgment Debtor Exam, Plaintiff's Application for Writ of Continuing Garnishment,

12  Defendant's Request for a Hearing on the Application for Writ of Garnishment, Garnishee's Answer,

13  Plaintiff's Response and Opposition to Defendant's Request for a Hearing Upon Plaintiff's

14  Application for Writ of Garnishment, and the arguments made by both parties at the garnishment

15  hearing, hereby finds that Defendant is not entitled to the relief requested and therefore RECOM-

16  MENDS that Plaintiff's Application for Writ of Continuing Garnishment be GRANTED.

17                    **I. STATEMENT OF FACTS AND PROCEDURAL HISTORY**

18         Nearly thirty years ago, Defendant executed promissory notes with Marine Midlands Bank

19  Western, Buffalo, New York. (Doc. No. 23 at 2.) The promissory notes secured the following four

20  student loans: January 18, 1983, in the amount of $2,500.00; October 2, 1983, in the amount of

21  $2,500.00; September 4, 1984, in the amount of $2,500.00; and August 17, 1987, in the amount of

22  $2,857.00. Id. The loan obligations were guaranteed by California Guaranteed Student Loan, and

23  then reinsured by the Department of Education under federal loan guarantee programs, Title IV-B of

24  the Higher Education Act of 1965, as amended, 20 U.S.C. § 1071, et seq. Id.

25         Defendant subsequently defaulted on all four of the student loans. (Doc. No. 23 at 2.) The

26  holder, Marine Midland Bank, filed a claim on the loan guarantee. Id. California Guaranteed Student

27  Loan, the guarantee agency, paid the claim in the amount of $11,333.44 to the bank. Id. California

28  Guaranteed Student Loan was then reimbursed for that claim by the Department of Education under

1    its reinsurance agreement. Id. The guarantor was unable to collect the full amount due on April 18,

2    2003, and assigned its right and title to the loans to the Department of Education. Id. On March 18,

3    2009, the Department of Education referred Defendant's case to Plaintiff for collection after its

4    collection efforts with Defendant failed. Id.

5         Plaintiff's collection efforts with Defendant also failed. (Doc. No. 23 at 2.) After

6    unsuccessful attempts to contact Defendant, Plaintiff filed a Complaint for Money Damages in the

7    United States District Court on November 16, 2009. (Id.; Doc. No. 1.) The Complaint sought the

8    recovery of the federally guaranteed student loans, pursuant to 20 U.S.C. § 1071, et seq. (Id.; Doc No.

9    1.) On November 20, 2009, Defendant was served with copies of the summons and complaint, but

10    still did not appear in the case. (Doc. No. 4 at 1.) Plaintiff alleges that Defendant has made no effort

11    to repay her student loans since first acquiring the obligations in 1983. (Doc. No. 23 at 3.) On March

12    24, 2010, Plaintiff filed a Declaration and Request for Default and Default Judgment against

13    Defendant. (Doc. No. 4.)

14         On March 24, 2010, a Default Judgment was entered against Defendant in the amount of

15    $24,665.67, plus post-judgment interest, with interest accruing at the rate of $2.51 per day.[2] (Doc.

16    No. 5.) Defendant failed to respond to Plaintiff's further attempts to contact her, despite notices of

17    delinquency and demand for payment. (Doc. No. 23 at 2-3.) After more than one year of failed

18    attempts to work cooperatively with Defendant, the lack of any communication or response forced

19    Plaintiff to seek other means to enforce the judgment. Id. Therefore, on October 5, 2011, Defendant

20    was notified by mail that her delinquency would necessitate execution of the judgment and may

21    include service on her employer with a writ of garnishment. Id.

22         On July 22, 2010, Plaintiff filed a Declaration and Request for Order and Appearance of

23    Judgment Debtor. (Doc. No. 10.) In the Declaration, Plaintiff asserted that the judgment against

24    Defendant had "not been satisfied, vacated, reversed, or barred by the statute of limitations," and the

25    judgment debtor had not been examined within the last four months. (Doc. No. 10 at 1-2.) In

26    response to Plaintiff's Declaration and Request, the Honorable Louisa S. Porter, United States

27

28    [2]    As of June 14, 2012, the outstanding balance with accruing interest on Defendant's student loans is
$27,542.92.

       09CV2578

1    Magistrate Judge, ordered Defendant to appear in court for a judgment debtor exam. (Doc. No. 13.)

2    The Order for Appearance of Judgment Debtor provided the following "Notice to Judgment Debtor:"

3        IF YOU FAIL TO APPEAR AT THE TIME AND PLACE SPECIFIED IN THIS ORDER, YOU MAY BE SUBJECT TO ARREST AND PUNISHMENT FOR

4        CONTEMPT OF COURT AND THE COURT MAY MAKE AN ORDER REQUIR-ING YOU TO PAY THE REASONABLE ATTORNEY'S FEES INCURRED BY

5        THE JUDGMENT CREDITOR IN THIS PROCEEDING.
    Cal. Civ. § 708.110.

6    (Doc. No. 13 at 2.)

7            Defendant was served with the Order for Judgment Debtor Exam on July 28, 2010. (Doc.

8    No. 14.) The exam was set for September 8, 2010, before the Honorable Louisa S. Porter. (Doc. No.

9    15.) Plaintiff appeared at the exam, but despite being served with notice of the scheduled exam,

10   Defendant failed to make an appearance. (Doc. No. 15.)

11           On March 15, 2012, Plaintiff filed an Application for a Writ of Continuing Garnishment.

12   (Doc. No. 23 at 3.)  The Application notified the Garnishee, Defendant's employer, that it was

13   required to withhold 25 percent of Defendant's net wages per pay period. (Doc. No. 17 at 2.)  Also

14   included with Plaintiff's Application was the Clerk's Notice of Post-Judgment Execution/Instructions

15   to Debtor, which informed Defendant of her right to request a hearing if her proposed property to be

16   garnished fell within federal and/or state exemptions.  Id.  Defendant was notified, "that there are

17   exemptions under the law which may protect some of the property from being taken by the

18   Government if [Defendant] can show that the exemptions apply." (Doc. No. 18 at 1-2.) An itemized

19   list of the major exemptions which apply in most situations in the State of California was attached to

20   the Instructions. (Doc. Nos. 18 at 2, 23 at 3.) The Instructions to Debtor explained the procedures to

21   follow in order to request a garnishment hearing before the Court.  (Doc. No. 18 at 2.)   The

22   Instructions also informed Defendant that if she requested a hearing, "[a]t the hearing you may explain

23   to the judge why you think you do not owe the money to the Government." (Doc. No. 18.)

24           On March 30, 2012, the Garnishee, Defendant's employer, Community Research

25   Foundation, filed an Answer in Response to the Writ of Continuing Garnishment, stating that

26   Defendant's net wages per semi-monthly pay period are $2,436.76. (Doc. No. 21.)

27           On April 2, 2012, Defendant filed a Request for Hearing on the Application for Writ of

28   Continuing Garnishment. (Doc. No. 20.) The Request form, provided to Defendant when Plaintiff

09CV2578

1   filed the Application, acknowledged that "all statements made in the attached Claim Exemption Form

2   are true and correct." Id. at 2. However, Defendant did not attach a Claim Exemption Form, and

3   failed to provide any basis for the requested hearing. (See Doc. No. 20.) Defendant simply signed

4   and dated the Request form, and provided her current address and phone number. Id. at 2.

5          On May 10, 2012, Plaintiff filed a Response and Opposition to Defendant's Request for a

6   Hearing, asserting that Defendant had not met the burden placed upon her by Section 3205(c)(5).

7   (Doc. No. 23.) Plaintiff argued that, because Defendant neglected to identify any applicable

8   exemptions, and failed to provide any other grounds for a hearing, the requirements to hold a hearing

9   had not been satisfied. (28 U.S.C. § 3205(c)(5); Doc. No. 23 at 5.) Further, without any specified

10   exemptions, Plaintiff was at a loss as to how to prepare for the hearing. (Doc. No. 23 at 5.)

11          On May 14, 2012, a hearing was set for May 23, 2012, before the Honorable Jan M. Adler,

12   United States Magistrate Judge. The following day, the hearing before Judge Adler was vacated and

13   set for scheduling before this Court. (Doc. No. 24.) On May 17, 2012, this Court set a garnishment

14   hearing for May 30, 2012. (Doc. No. 25 at 1.) Defendant was ordered to submit a Reply brief to the

15   Court and to Plaintiff. Id. The Reply brief was not to exceed five pages, and was to be submitted no

16   later than May 24, 2012, so that Plaintiff would have adequate time to prepare for the hearing. Id. The

17   Court ordered Defendant to identify in the Reply brief the exemptions or grounds on which a hearing

18   was being requested. Id. at 2. Defendant was informed that failure to submit a Reply brief in

19   accordance with the Court's Order may result in removal of the garnishment hearing from the Court's

20   calendar, and the issuance of a Report and Recommendation to the Honorable M. James Lorenz,

21   United States District Judge, recommending that Plaintiff's Application for Writ of Continuing

22   Garnishment be granted. Id.

23          Defendant failed to comply with this Court's Order. No Reply brief was submitted by the

24   Court's deadline, or at any time prior to the hearing date. The Court did not vacate the hearing from

25   the calendar, but instead chose to hold the hearing to allow both parties, especially Defendant, an

26   opportunity to be heard on the garnishment issue.

27          On May 30, 2012, both parties participated in the garnishment hearing held before this

28   Court. (Doc. No. 26.) At the hearing, the Court noted that there was a lack of any response by

1    Defendant despite efforts to elicit a response to Plaintiff's Application. (Doc. No. 27 at 3.) Plaintiff

2    reiterated that it had not received any notice of exemption from Defendant, and therefore was at a loss

3    as to how to respond or proceed with the hearing. Id. at 4. The Court expressed its agreement with

4    Plaintiff, but offered Defendant the opportunity to provide an explanation for her lack of response to

5    Plaintiff's numerous attempts to engage in a cooperative negotiation. Id. at 4-5. The Court noted,

6    "even though I don't think you're entitled to a hearing based on my reading of the law, I'm going to

7    treat this as your opportunity to have a hearing." Id. at 16.)

8        Defendant told the Court that she was "not trying to get out of the debt," and asked the

9    Court to review a list of "considerations" she had brought to the hearing. (Doc. No. 27 at 5-6.) The

10    Court allowed Defendant to provide a copy of the considerations to the Court and Plaintiff.[3/] (Id. at

11    9; Exh. 1.) After reviewing the considerations, the Court stated, "...none of them that I see, the eight

12    that you have listed, can be described even remotely as falling within one of the recognized

13    exemptions." Id.

14        Defendant asked the Court if the "Government would work with me on this," and requested

15    "something less than 25 percent" to be garnished from her wages. (Doc. No. 27 at 21.) The Court

16    responded that Plaintiff had tried to work with Defendant. Id. at 22. Plaintiff asserted, "We're not

17    at a settlement conference at this point." Id. at. 23. Plaintiff also stated, "...there is a judgment in this

18    case, and we need to execute on that judgment." Id. The Court further explained, "There was a

19    complaint filed. Service was attempted. No answer was filed. The United States sought a judgment

20    on default for lack of an answer or appearance on your part. That was granted, and a default judgment

21    was entered, which means the case is over for all intents and purposes." Id. at 34.

22        During the hearing, Defendant did not contest that she had received the student loans from

23    the bank in 1983 through 1987, nor did she state that she had paid any money towards satisfying the

24    obligations. (See Doc. No. 27.) Defendant did not dispute Plaintiff's statement, "There's never been

25    any payment that I'm aware of made on this almost thirty-year old loan." Id. at 11. At the conclusion

26    of the hearing, the Court stated, "...my Report and Recommendation will come out shortly, granting

27    the Government's Application for a Writ of Garnishment." Id. at 36.)

28

---

[3/]   Defendant's list of considerations is attached as Exhibit 1 to this Report and Recommendation.

09CV2578

## II. STANDARD OF REVIEW

The Federal Debt Collections Procedure Act ("FDCPA"), 28 U.S.C. § 3001, et seq., "provides the exclusive civil procedures for the United States . . . to recover judgment on a debt." 28 U.S.C. § 3001(a)(1). To collect a debt, the FDCPA authorizes the United States to seek a writ of garnishment from the court. 28 U.S.C. § 3205. Section 3205 of the FDCPA permits a court to issue a writ of garnishment against certain property of a debtor, including "nonexempt disposable earnings." 28 U.S.C. § 3205(a). The FDCPA defines disposable earnings as "earnings remaining after all deductions required by law have been withheld" and further defines "nonexempt disposable earnings" as "25 percent of disposable earnings." 28 U.S.C. § 3002(9).

Section 3205(b) states the general requirements for a Writ of Garnishment. 28 U.S.C. § 3205(b). Plaintiff must properly apply for the writ, provide the proper form of the writ, serve a request for an Answer on Defendant's employer, and serve the writ on the judgment debtor, all in compliance with the statute. 28 U.S.C. § 3205(c)(3). The Clerk of Court provides notice to the judgment debtor, along with a copy of the Application for Writ of Garnishment, in the form proscribed in Section 3202(b). The notice must include an explanation of the judgment debtor's rights, exemptions that may apply, and the procedures applicable if the judgment debtor disputes the issuance of the writ. 28 U.S.C. § 3202(b).

Section 3205(c)(5) allows a defendant to file a request for a hearing within twenty days after receipt of the Answer by the Garnishee. 28 U.S.C. § 3205(5). The defendant must state the grounds for the objection and bear the burden of proving such grounds. Id. A copy of the objection and request for a hearing shall be served on the garnishee and all other parties. Id. Pursuant to Section 3202(d), the Court is required to hold a hearing on the defendant's objection as soon as practicable. 28 U.S.C. § 3202(d). The Court shall determine the extent, if any, to which the exemption applies. 28 U.S.C. § 3014(b)(2). Under Section 3014(b)(2), the burden of persuasion is on the defendant to show the extent of any exemption. 28 U.S.C. § 3205(c)(5).

Pursuant to Section 3202(d), the issues to be considered at a garnishment hearing are limited to determining the validity of any claim of exemption, the government's compliance with statutory requirements, and the validity of the default judgment. 28 U.S.C. § 3202(d). A debtor's

1   assertions in support of a request for a hearing must fall within the subject matter outlined in Section

2   3202(d). See U.S. v. Pettigrew, 2011 WL 900545, at 1 (N.D. Tex.); U.S. v. Pedro, 2011 WL 2262226,

3   at 3 (D. Ariz.).

4   ### III. RULINGS

5     A review of the documents filed in this case shows that Plaintiff has fulfilled the general

6   requirements for a Writ of Garnishment as proscribed by Section 3205(b). 28 U.S.C. § 3205(b). After

7   receiving Defendant's case from the Department of Education in 2009, Plaintiff tried unsuccessfully

8   to engage in comminations with Defendant regarding her unpaid student loans. After no communica-

9   tion was reciprocated, Plaintiff properly applied for a Writ of Garnishment, filing the Application with

10   the United States District Court, serving a request for an Answer on the Garnishee, and serving the

11   Writ on Defendant. 28 U.S.C. § 3205(c)(3). The Clerk of Court provided proper notice to Defendant,

12   which included a copy of the Application for Writ of Continuing Garnishment, an explanation of

13   Defendant's rights, a list of exemptions that may be applicable, and the procedure for objecting to the

14   Application. 28 U.S.C. § 3202(b).

15     Although Defendant did file a timely request for a hearing as required by Section

16   3205(c)(5), she failed to identify any exemptions that may apply to her wages, or to provide any basis

17   for requesting a hearing. As the Court stated during the garnishment hearing, none of the eleventh-

18   hour "considerations" that Defendant produced that day qualified as exemptions to the garnishment

19   of her wages. Defendant does not dispute that she incurred the student loans, nor does she dispute

20   their delinquency. Rather, she simply signed and dated the hearing request form, ignored a Court

21   Order to submit a Reply brief with specified exemptions, and requested at the hearing that Plaintiff

22   work with her to obtain a lower interest rate and retroactively reduce the interest rate that has already

23   been accruing. (Doc. No. 27 at 21.) As Plaintiff stated and the Court reiterated, the opportunity for

24   a settlement conference has long since past. Id. at 23, 25. Plaintiff noted during the hearing that it had

25   attempted to work cooperatively with Defendant for three years and received no response or

26   cooperation. Id. at 11.

27   //

28   //

8

1    The Court adheres to the following reasoning as explained to Defendant at the garnishment

2    hearing:

> "... [S]ome thirty years ago, you received four separate loans totaling roughly $10,000. You agreed to pay those loans back at a certain interest rate. You have not done so. You have not claimed any exemptions. You've had the opportunity to claim exemptions on more than one occasion. Initially when the notice went out and was served upon you - once again, when the Court ordered you to - to give you a second bite at the apple, to claim some exemptions and provide them to the United States Attorney's Office on a date certain, May 24th, a week ago, you failed to do that. You come into court today - and I'm pleased that you're here - with a list of eight considerations. The Court has accepted your considerations. [Plaintiff] has been provided a copy, albeit much too late. But she has a copy. She's reviewed it. I've reviewed it. None of these eight considerations fall within any of the exemptions that I'm aware of. But it's not my burden nor is it [Plaintiff's] burden to show that you are entitled to an exemption. It's really your burden to come here prepared.

10   (Doc. No. 27 at 28-29.)

11   Defendant did not assert any of the limited issues permitted for a hearing to be set under

12   Section 3202(d), nor did she raise any basis at the hearing for Plaintiff's Application to be denied. 28

13   U.S.C. § 3202(d).   The Answer of the Garnishee states that it holds property subject to the

14   garnishment, namely wages of the Defendant. (Doc. Nos. 21, 23 at 4.) The Government does not seek

15   more than 25 percent of Defendant's disposable earnings, as permitted by law. 28 U.S.C. § 3002(9).

16   The Court finds that Plaintiff has followed all necessary steps to comply with the FDCPA.

17                                          **IV. CONCLUSION**

18   For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Application for

19   Writ of Continuing Garnishment be GRANTED. This report and recommendation of the undersigned

20   Magistrate Judge is submitted to the United States District Judge assigned to this case.

21   **IT IS ORDERED** that no later than July 13, 2012, any party to this action may file written

22   objections with the Court and serve a copy on all parties.   The document should be captioned

23   "Objections to Report and Recommendation."

24   **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court

25   and served on all parties no later than 14 days after objections, if any, are filed.

26   //

27   //

28   //

1   IT IS SO ORDERED.

2   DATED:  June 14, 2012

3

4

5   Hon. William V. Gallo
    U.S. Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

09CV2578

# EXHIBIT 1

5/30/12

I'm asking the court to consider the factors below, before determining the amount due and the % of intent to garnish wages and in determining the total time of repayment.

1.) The original total amount borrowed was less than $ 10,000. The amount of $30,000. requested to be repaid is over 300%, which appears extreme and excessive.

2.) The $30,000 was calculated on a higher interest rate (9%) than the actual interest rate of each of the years involved.  See attachment A.

3.) Effort was made in 1993 to consolidate the four loans for repayment, but the request was denied because there was a defaulted loan status on one or more of the loans. (two of the loans were handled on the East coast and two were being handled on the West coast by different financial agencies)See attachment B

4.) The original date of default was wrongly placed, during what should have been a deferred period, as I was still finishing my graduate requirements. See attachment C

5.) The status of "default" disallowed me to consolidate the loans at anytime.

6.) The status of "default" disallowed me to apply for the Mental Health Assumption Programs that would have paid $ 10,000.of student loan monies. I have worked for many non-profit agencies that offered this due to the public service/ mental health work that I do. See attachment D

7.) I'd like the court to consider that I have worked consistently for twenty-three years in the field of social work, in public service, working with the homeless and impoverished populations and continue currently doing this type work for S. D. County;  Police and Sheriff Depts.

8.) I turn 60 years old this year; single (sole provider). I have no savings and no retirement. I work FT as a 1ST Emergency Responder for the mentally ill, on the public streets through patrol with NCPD; IBSO; LMPD; COPD. I have a limited time of ability to continue to work this type of duty, and to garnish $30,000. from my wages over the next 2.5 yrs will undoubtedly cause a financial hardship in my remaining working yrs of five.

Respectfully submitted,
Karen Hancock-Dunford



**The Smart Student Guide to Financial Aid**



Site Map    About FinAid

- Loans
- Scholarships
- Savings
- Military Aid

Other Types of Aid

Financial Aid Applications

Answering Your Questions

Calculators

Beyond Financial Aid

[ SEARCH ]

## Historical Interest Rates

This page provides information about historical interest rates and interest rate caps on the Stafford and PLUS education loans.

The interest rate formulas on the Stafford Loan have changed multiple times, with the following major milestones:

Advertisement

**simpletuition**
plan · pay · win · pay back

Find Student Loans. There are options. We have them.

View Options.

- 2008-09 through 2011-12: Cut subsidized Stafford loan interest rates for undergraduate students to 6.0%, 5.6%, 4.5% and 3.4%, with a return to 6.8% in 2012-13. These cuts are available only to undergraduate students, not graduate students, and only for subsidized Stafford loans, not unsubsidized Stafford loans. Those loans remain at 6.8%.
- 2006-07: Replacement of separate variable in-school/grace and repayment rates on the Stafford Loan with a single fixed rate of 6.8%. Replacement of variable interest rates on the PLUS Loan with a fixed rate of 8.5% (FFELP) and 7.9% (DL).
- 1998-99: 80 basis point reduction in both in-school/grace and repayment rates on the Stafford Loan. Consolidation loan interest rates switched from rounding up to the nearest whole percent to the nearest 1/8th of a percent and capped at 8.25%.
- 1995-96: Separate rates established during the in-school and grace periods on the Stafford Loan, with these rates 60 basis points lower than repayment rates.
- 1994-95: Change in the cap on the Stafford Loan from 9.0% to 8.25% and the cap on the PLUS Loan from 10.0% to 9.0%.
- 1992-93: Change in the cap on the PLUS Loan from 12.0% to 10.0% and a 15 basis point reduction in the interest rate.

## Repayment Interest Rates

The following table lists historical Stafford loan repayment interest rates.

| Year | Rate | Formula |
|---|---|---|
| | 6.8% | fixed rate (unsubsidized Stafford for all students and subsidized Stafford for graduate students) |
| 2010- | | |

Advertisement



**simpletuition**

# Need a student loan fast?

● ● ●

Search, compare and apply – all in one place!

**Go!**

| Year | Rate | Description |
|---|---|---|
| 11 | 4.5% | fixed rate (subsidized Stafford for undergraduate students) |
| | 2.47% | variable rate (loans from before 7/1/06) (0.167 + 2.3%, cap 8.25%) |
| | 6.8% | fixed rate (unsubsidized Stafford for all students and subsidized Stafford for graduate students) |
| 2009-10 | 5.6% | fixed rate (subsidized Stafford for undergraduate students) |
| | 2.48% | variable rate (loans from before 7/1/06) (0.178 + 2.3%, cap 8.25%) |
| | 6.8% | fixed rate (unsubsidized Stafford for all students and subsidized Stafford for graduate students) |
| 2008-09 | 6.0% | fixed rate (subsidized Stafford for undergraduate students) |
| | 4.21% | variable rate (loans from before 7/1/06) (1.905 + 2.3%, cap 8.25%) |
| 2007-08 | 6.8% | fixed rate |
| | 7.22% | variable rate (loans from before 7/1/06) (4.919 + 2.3%, cap 8.25%) |
| 2006-07 | 6.8% | fixed rate |
| | 7.14% | variable rate (loans from before 7/1/06) (4.843 + 2.3%, cap 8.25%) |
| 2005-06 | 5.30% | (2.998 + 2.3%, cap 8.25%) |
| 2004-05 | 3.37% | (1.066 + 2.3%, cap 8.25%) |
| 2003-04 | 3.42% | (1.121 + 2.3%, cap 8.25%) |
| 2002-03 | 4.06% | (1.760 + 2.3%, cap 8.25%) |
| 2001-02 | 5.99% | (3.688 + 2.3%, cap 8.25%) |

| Year | Rate | Formula |
|------|------|---------|
| 2000-01 | 8.19% | (5.893 + 2.3%, cap 8.25%) |
| 1999-00 | 6.92% | (4.621 + 2.3%, cap 8.25%) |
| 1998-99 | 7.46% | (5.155 + 2.3%, cap 8.25%) |
| 1997-98 | 8.25% | (5.16 + 3.1%, cap 8.25%) |
| 1996-97 | 8.25% | (5.16 + 3.1%, cap 8.25%) |
| 1995-96 | 8.25% | (5.82 + 3.1%, cap 8.25%) |
| 1994-95 | 7.43% | (4.33 + 3.1%, cap 8.25%) |
| 1993-94 | 6.22% | (3.12 + 3.1%, cap 9.0%) |
| 1992-93 | 6.94% | (3.84 + 3.1%, cap 9.0%) |

Before 1992, there were the GSL and SLS loans. These loans were more similar in concept to the current PLUS loans than the Stafford loans. The interest rates on these loans were somewhat complicated. For example, from October 1, 1981 to October 1, 1992, interest rates on the SLS loans were fixed rates that changed annually with various caps (14.0%, 12.0%, 9.0%, 8.0% and 7.0%). From July 1, 1988 to October 1, 1992, this loan had a fixed rate of 8% from disbursement to four years after the loan entered repayment, and 10% thereafter. Variable rates were introduced on July 1, 1987, and one could convert a fixed rate loan into a variable rate loan through January 1, 1995 using a refinancing mechanism.

### In-School Interest Rates

The following table lists historical Stafford loan in-school/grace period interest rates.

| Year | Rate | Formula |
|------|------|---------|
| 2010-11 | 6.8% | fixed rate (unsubsidized Stafford for all students and subsidized Stafford for graduate students) |
| | 4.5% | fixed rate (subsidized Stafford for undergraduate students) |

| | | |
|---|---|---|
| | 1.87% | variable rate (loans from before 7/1/06) (0.167 + 1.7%, cap 8.25%) |
| 2009-10 | 6.8% | fixed rate (unsubsidized Stafford for all students and subsidized Stafford for graduate students) |
| | 5.6% | fixed rate (subsidized Stafford for undergraduate students) |
| | 1.88% | variable rate (loans from before 7/1/06) (0.178 + 1.7%, cap 8.25%) |
| 2008-09 | 6.8% | fixed rate (unsubsidized Stafford for all students and subsidized Stafford for graduate students) |
| | 6.0% | fixed rate (subsidized Stafford for undergraduate students) |
| | 3.61% | variable rate (loans from before 7/1/06) (1.905 + 1.7%, cap 8.25%) |
| 2007-08 | 6.8% | fixed rate |
| | 6.62% | variable rate (loans from before 7/1/06) (4.919 + 1.7%, cap 8.25%) |
| 2006-07 | 6.8% | fixed rate |
| | 6.54% | variable rate (loans from before 7/1/06) (4.843 + 1.7%, cap 8.25%) |
| 2005-06 | 4.70% | (2.998 + 1.7%, cap 8.25%) |
| 2004-05 | 2.77% | (1.066 + 1.7%, cap 8.25%) |
| 2003-04 | 2.82% | (1.121 + 1.7%, cap 8.25%) |
| 2002-03 | 3.46% | (1.760 + 1.7%, cap 8.25%) |
| 2001-02 | 5.39% | (3.688 + 1.7%, cap 8.25%) |
| 2000-01 | 7.59% | (5.893 + 1.7%, cap 8.25%) |
| 1999- | 6.32% | (4.621 + 1.7%, cap 8.25%) |

| 00 | | |
|---|---|---|
| 1998-99 | 6.86% | (5.155 + 1.7%, cap 8.25%) |
| 1997-98 | 7.65% | (5.16 + 2.5%, cap 8.25%) |
| 1996-97 | 7.65% | (5.16 + 2.5%, cap 8.25%) |
| 1995-96 | 7.65% | (5.82 + 2.5%, cap 8.25%) |
| 1994-95 | 7.43% | (4.33 + 3.1%, cap 8.25%) |
| 1993-94 | 6.22% | (3.12 + 3.1%, cap 9.0%) |
| 1992-93 | 6.94% | (3.84 + 3.1%, cap 9.0%) |

**PLUS Loan Interest Rates**

The following table lists historical PLUS loan interest rates.

| Year | Rate | Formula |
|---|---|---|
| 2010-11 | 7.9% | fixed rate (DL) |
| | 3.27% | variable rate (loans from before 7/1/06) (0.167 + 3.1%, cap 9.0%) |
| | 8.5% | fixed rate (FFELP) |
| 2009-10 | 7.9% | fixed rate (DL) |
| | 3.28% | variable rate (loans from before 7/1/06) (0.178 + 3.1%, cap 9.0%) |
| | 8.5% | fixed rate (FFELP) |
| 2008-09 | 7.9% | fixed rate (DL) |
| | 5.01% | variable rate (loans from before 7/1/06) (1.905 + 3.1%, cap 9.0%) |
| | 8.5% | fixed rate (FFELP) |
| 2007-08 | 7.9% | fixed rate (DL) |
| | | variable rate (loans from before |

Case 3:09-cv-02578-L-WVG   Document 28   Filed 06/18/12   PageID.147   Page 18 of 22

| | | |
|---|---|---|
| | 8.02% | 7/1/06)<br>(4.919 + 3.1%, cap 9.0%) |
| 2006-07 | 8.5% | fixed rate (FFELP) |
| | 7.9% | fixed rate (DL) |
| | 7.94% | variable rate (loans from before 7/1/06)<br>(4.843 + 3.1%, cap 9.0%) |
| 2005-06 | 6.10% | (2.998 + 3.1%, cap 9.0%) |
| 2004-05 | 4.17% | (1.066 + 3.1%, cap 9.0%) |
| 2003-04 | 4.22% | (1.121 + 3.1%, cap 9.0%) |
| 2002-03 | 4.86% | (1.760 + 3.1%, cap 9.0%) |
| 2001-02 | 6.79% | (3.688 + 3.1%, cap 9.0%) |
| 2000-01 | 8.99% | (5.893 + 3.1%, cap 9.0%) |
| 1999-00 | 7.72% | (4.621 + 3.1%, cap 9.0%) |
| 1998-99 | 8.26% | (5.155 + 3.1%, cap 9.0%) |
| 1997-98 | 8.98% | (5.88 + 3.1%, cap 9.0%) |
| 1996-97 | 8.72% | (5.62 + 3.1%, cap 9.0%) |
| 1995-96 | 8.98% | (5.87 + 3.1%, cap 9.0%) |
| 1994-95 | 8.38% | (5.28 + 3.1%, cap 9.0%) |
| 1993-94 | 6.64% | (3.54 + 3.1%, cap 10.0%) |
| 1992-93 | 7.36% | (4.26 + 3.1%, cap 10.0%) |
| 1991-92 | 9.34% | (6.09 + 3.25%, cap 12.0%) |
| 1990- | 11.49% | (8.24 + 3.25%, cap 12.0%) |

| 91 | | |
|---|---|---|
| 1989-90 | 12.00% | (9.15 + 3.25%, cap 12.0%) |
| 1988-89 | 10.45% | (7.20 + 3.25%, cap 12.0%) |
| 1987-88 | 10.27% | (7.02 + 3.25%, cap 12.0%) |

For other historical interest rate data, such as the Commercial Paper
Rate, LIBOR index and Prime Lending Rate, see the Federal Reserve
Statistical Release and the Federal Reserve Historical Data.

Home | Loans | Scholarships | Savings | Military Aid | Other Types of Aid | Financial Aid Applications
Answering Your Questions | Calculators | Beyond Financial Aid | Site Map | About FinAid®

Copyright © 2012 by FinAid Page, LLC. All rights reserved.
Mark Kantrowitz, Publisher
www.FinAid.org

*Albert G. Rubin, Ltd.*
*Attorney at Law*
6139 NORTH CICERO AVENUE
CHICAGO, IL 60646-4303
1-800-766-7887

*[handwritten: I'm applying which this all loans will repay]*

KAREN DUNFORD
FILE #: 345508

6/25/93
L24

| CREDITOR(S) | ACCOUNT # | AMOUNT |
|---|---|---|
| CALIFORNIA STUDENT AID COMM | 216646122-S820146 | 2926.18 |
| CALIFORNIA STUDENT AID COMM | 216646122-S830162 | 2926.18 |
| CALIFORNIA STUDENT AID COMM | 216646122-S870152 | 1992.05 |

Your current repayment status may now qualify you for the Federal Loan Consolidation Program.

This program offers you the opportunity to consolidate all your qualified Guaranteed Student Loans (Stafford) as well as National Direct Student Loans (Perkins).

The minimum amount your loans must meet or exceed to qualify for this program is $7,500.00. You may combine your loans and your spouse's (if applicable) to meet this minimum.

Sallie Mae has indicated that upon your eligibility they may transfer your defaulted loan to a current loan with them with extended payment periods. You may also become eligible for further financial aid (loans and grants).

To request your application please call Sallie Mae Smart Loan Consolidation at 1-800-524-9100. Upon receipt of your application please contact us at 1-800-766-7887 to suspend any further action pending on your account.

This is a limited time offer so **call today** to take advantage of this outstanding opportunity.

According to law, we must advise you that all information obtained will be used to collect this debt.

*[signature]*

Albert G. Rubin

**RETURN THIS PORTION WITH YOUR PAYMENT TO:**

*Albert G. Rubin, Ltd.*
*Attorney at Law*
6139 NORTH CICERO AVENUE
CHICAGO, IL 60646-4303

#BWNBLDM ********* 3-DIGIT 921
#A3455080004#  CAL40L T014P001
KAREN DUNFORD
7381 MARGERUM AVE

SAN DIEGO, CA.  92120-2013

FILE #: 345508
AMT. PAST DUE: $7844.41

DATE:  6/25/93

L24L



**MARINE MIDLAND BANK**

P.O. Box 1338
Buffalo, New York 14240

*Handwritten note: Note the Date I was seeking Deferment*

Education Loans

11/16/89                                    BORROWER SSN: 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
    KAREN B. DUNFORD                              LOAN #: 01
    P.O. BOX 15293              25/N01/R

    SAN DIEGO, CA 921150293          TELEPHONE #: (619)390-9855
                                       LOAN TYPE: GSL
                                       GUARANTOR: CSAC


DEAR BORROWER:

YOU RECENTLY CONTACTED OUR OFFICE CONCERNING A DEFERMENT ON YOUR
GUARANTEED STUDENT LOAN.

ENCLOSED IS A REQUEST FOR DEFERMENT OF REPAYMENT.  PLEASE COMPLETE
SECTION I OF THE FORM INCLUDING YOUR SIGNATURE WHERE INDICATED AND
SUBMIT THE FORM TO THE APPROPRIATE OFFICIAL FOR COMPLETION OF
SECTION II.  A RETURN ENVELOPE IS ENCLOSED FOR YOUR CONVENIENCE IN
RETURNING THE COMPLETED FORM.

IF YOU HAVE ANY QUESTIONS, PLEASE CONTACT ONE OF OUR REPRESENTATIVES
AT 1-800-443-7499.

                         THANK YOU



                         EDUCATION LOAN DEPARTMENT




ENCLOSURE



25/SAB



# HEALTH PROFESSIONS
# EDUCATION FOUNDATION
*Giving Golden Opportunities*

Home ⟶ HPEF ⟶ **MHLAP**

## Health Professions Education Foundation
## Mental Health Loan Assumption Program (MHLAP)

**CONNECT WITH US** 



**The next deadline will be August 17, 2012. Out of date applications will not be accepted.**

2012 MHLAP Application Fillable

2012 MHLAP Application Printable

Note: You must have Adobe Acrobat Reader on your computer to view the application. If you do not have Acrobat Reader, please click on the link to download it.

If you have questions pertaining to the requirements for hard-to-fill or retain positions you may contact your County. Click on the County Contacts List

Click on the HOW-To Power Point for more information and tips on filling out your application.

Join one of the MHLAP Application Question and Answer Teleconference Calls

**Background:** The MHLAP was created by the Mental Health Services Act (Act), passed by California voters in November 2004. The Act provided funding to develop a loan forgiveness program in order to retain qualified professionals working within the Public Mental Health System (PMHS). Through the Workforce Education and Training component of the Act, $5 million is allocated yearly to loan assumption awards. An award recipient may receive up to **$10,000** to repay educational loans in exchange for a 12-month service obligation in a hard-to-fill or retain position within the County PMHS.

**Eligible Professions:** Counties determine which professions are eligible for their County's hard-to-fill/ retain positions. Eligible professions include, but are not limited to, Registered or Licensed Psychologists, Registered or Licensed Psychiatrists, Postdoctoral Psychological Assistants, Postdoctoral Psychological Trainees, Registered or Licensed Marriage and Family Therapists, Registered or Licensed Clinical Social Workers, Licensed Professional Clinical Counselors, Licensed Professional Clinical Counselor Interns , and Registered or Licensed Psychiatric Mental Health Nurse Practitioners in California.

*Page last revised: May 9, 2012 2:27 PM*

Conditions of Use | Privacy Policy
Copyright © 2007 State of California